UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL S. CHAMBERS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:22-cv-01774-JMS-KMB |
| ) | |
| MARK SEVIER, ) | |
| ) | |
| Respondent. ) | |

**Order Dismissing Petition for Writ of Habeas Corpus,
Addressing Petitioner's Pending Motions,
and Denying Certificate of Appealability**

Petitioner Michael Chambers was convicted in 2012 of two counts of sexual misconduct with a minor in Indiana cause number 53C09-1106-FB-000558. Dkt. 8-1. Mr. Chambers now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 1. The respondent moves to dismiss the petition because it is barred by the statute of limitations, all of the raised claims are procedurally defaulted,[1] and because Mr. Chambers has not established that he is actually innocent of the crimes. Dkt. 8 at 3. For the reasons explained in this Order, the respondent's motion to dismiss, dkt. [8], is **GRANTED**, and Mr. Chambers' petition is **DISMISSED with prejudice**.

**I. Background Facts and Procedural History**

For context, the Court recites the statement of facts as set forth by the Indiana Court of Appeals on Mr. Chambers' direct appeal:

> During the spring of 2011, C.F. lived in a Bloomington, Indiana townhouse with her four daughters, including fourteen-year-old S.F. Because C.F.'s best friend and her friend's fiancé, Chambers, were homeless, C.F. allowed them to temporarily

---

[1] The Court acknowledges the respondent's argument that in addition to Mr. Chambers' petition being time barred, his claims are procedurally defaulted. *See* dkt. 8 at 4-5. However, as further discussed in this Order, the Court finds that the time bar and Mr. Chambers' inability to overcome it by showing his actual innocence is dispositive, and thus, the Court need not include any analysis of whether the raised grounds in the petition are procedurally defaulted.

> move into the townhouse. Chambers, who was unemployed, began to spend time with S.F., do errands for her, and purchase small things for her.
>
> One evening around midnight, S.F., went into her kitchen to get a drink of water. Chambers came into the kitchen and he and S.F. began kissing. S.F. removed her sweatpants and Chambers inserted the tip of his penis into S.F.'s vagina. She pushed Chambers away because the activity hurt her, and he stopped. On another occasion, Chambers put his finger into S.F.'s vagina. S.F. indicated that she was in pain, and Chambers stopped.
>
> On June 21, 2011, the State charged Chambers with two counts of Sexual Misconduct with a Minor. On July 6, 2012, Chambers was tried in a bench trial and found guilty as charged. He received two twenty-year sentences, to be served consecutively . . . .

Dkt. 8-6 at 2-3 (No. 53A01-1209-CR-401).

The Indiana Court of Appeals held that there was sufficient evidence to support Mr. Chambers' convictions but reduced his sentence to twenty years. *Id.* at 8. On July 2, 2013, the Indiana Supreme Court granted the state's petition to transfer related to sentencing and ultimately resentenced him to forty years. Dkt. 8-7 (state's petition for transfer); dkt. 8-10 (No. 53S01-1307-CR-459).

Mr. Chambers then initiated post-conviction relief proceedings in cause number 53C09-1312-PC-002235, on December 9, 2013, and his petition was dismissed with prejudice on December 18, 2018, when the parties reached an agreement to modify his sentence. Dkt. 8-11 at 1-9; dkt. 8-12 (modified sentences to be served concurrently).

Mr. Chambers did not pursue any other collateral challenges until he filed his § 2254 petition in this Court on September 7, 2022. Dkt. 1.

## II. Applicable Law

### A. Statute of Limitations

A federal court may grant habeas relief only if the petitioner demonstrates that he is in

custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). In an attempt to "curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law," Congress, as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), revised several statutes governing federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 404 (2000). "Under 28 U.S.C. § 2244(d)(1)(A), a state prisoner seeking federal habeas relief has just one year after his conviction becomes final in state court to file his federal petition." *Gladney v. Pollard*, 799 F.3d 889, 894 (7th Cir. 2015). This leaves two options for when a judgment becomes final. "For petitioners who pursue direct review all the way to th[e] [United States Supreme] Court, the judgment becomes final . . . when th[e] [United States Supreme] Court affirms a conviction on the merits or denies a petition for certiorari." *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (quotation marks omitted). "For all other petitioners, the judgment becomes final . . . when the time for pursuing direct review in th[e] [United States Supreme] Court, or in state court, expires." *Id.* (quotation marks omitted). "The one-year clock is stopped, however, during the time the petitioner's 'properly filed' application for state postconviction relief 'is pending.'" *Day v. McDonough*, 547 U.S. 198, 201 (2006) (quoting 28 U.S.C. § 2244(d)(2)).

### B. Equitable Tolling

A petitioner is entitled to equitable tolling "if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). Courts do not apply equitable tolling if the petitioner fails to demonstrate either of these elements. *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016). Equitable tolling requires a case-by-case decision guided by precedent. *Holland*, 560 U.S. at 649-50. Equitable tolling is not a chimera, but it is nevertheless an

3

extraordinary remedy that is rarely granted. *Carpenter*, 840 F.3d at 870. Further, "a prisoner's proof of actual innocence may provide a gateway for federal habeas review of a procedurally defaulted claim of constitutional error." *McQuiggin v. Perkins*, 569 U.S. 383, 393 (2013) (citing *House v. Bell*, 547 U.S. 518, 537-38 (2006)).

### III. Discussion

The respondent argues that "[e]ven giving Chambers one year from December 18, 2018, the date that his sentence was modified" as a result of his post-conviction relief proceedings, "he filed his petition over two years late," and "[h]e does not argue that he is entitled to equitable tolling." Dkt. 8 at 4. The respondent further contends that Mr. Chambers cannot excuse his time bar (or his procedural default) by meeting the actual innocence standard. *Id.* at 5-6. The Court agrees, based on its analysis below.

**A. Statute of Limitations**

In his § 2254 petition, Mr. Chambers admits that this is his "first time filing anything in a federal court," and that he was unaware he "could file anymore after [his] post-conviction." Dkt. 1 at 10. Further, in one of his responses to the motion dismiss, Mr. Chambers concedes that he understands his petition "was filed late . . . and that this court could easily dismiss" it based on that issue.[2] Dkt. 16 at 1-2. While Mr. Chambers does not explicitly state that he believes he is entitled to equitable tolling, he offers reasons for his untimeliness, including that he did not know that he had further options he could pursue after direct appeal and post-conviction relief until a law librarian told him about the habeas process. *Id.*

---

[2] Mr. Chambers also acknowledges that he failed to sign his petition in a rush to complete it with limited time permitted in the law library. Dkt. 16 at 1-2.

4

To avoid dismissal on equitable tolling grounds, Mr. Chambers must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649.

The Court does not find that Mr. Chambers' reasons establish that he is entitled to equitable tolling. The "lack of representation is not on its own sufficient to warrant equitable tolling, nor is a prisoner's lack of legal training." *Socha v. Boughton*, 763 F.3d 674, 678 (7th Cir. 2014); *see also Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020) (Equitable tolling applies when "some 'extraordinary circumstance', beyond the applicant's control, [ ] prevents timely filing; simple legal errors, such as ignorance of the federal deadline, do not suffice.") (quoting *Holland*, 560 U.S. at 649-52). "[I]t is established that prisoners' shortcomings of knowledge about the AEDPA or the law of criminal procedure in general do not support tolling." *Davis v. Humphreys*, 747 F.3d 497, 500 (7th Cir. 2014).

In sum, Mr. Chambers has not shown that his circumstance—his lack of knowledge about the availability of federal habeas relief—was extraordinary. Thus, he is not entitled to equitable tolling, and his untimely petition, filed well after the one-year deadline, is subject to dismissal.

**B. Actual Innocence**

In effort to overcome the time bar of his petition, Mr. Chambers argues that he is actually innocent of his convictions. Dkt. 15 at 2-4. However, "tenable actual-innocence gateway pleas are rare." *McQuiggin*, 569 U.S. at 386. To demonstrate actual innocence, a petitioner must show "'that, in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

"'New evidence' in this context does not mean 'newly discovered evidence'; it just means evidence that was not presented at trial. And because an actual-innocence claim 'involves evidence

5

the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record.'" *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (quoting *House*, 547 U.S. at 538).

Mr. Chambers raises two issues in this context. First, he argues that the "DNA Sexual Assault Examination Kit" on the minor victim and the "expert testimony by the medical S.A.N.E. Nurse" who conducted a forensic exam of the victim "was not permitted at [his] bench trial . . . for some reason or another." Dkt. 15 at 2-3. He argues that "[t]here was no DNA of [his] found in or on or under any part of the alleged victim's body," and if he had the DNA examination kit, he could use it to show that his DNA was not present and "there was no presence of any spermatocidal killing agent present."[3] *Id.* at 3-4. Second, Mr. Chambers argues that following an objection from his counsel during the victim's testimony, the trial court judge stated "she [was] going to strike it all from the record and that she will not consider it." *Id.* at 5-6. It appears that Mr. Chambers believes the entirety of the victim's testimony was stricken from the record such that without it there would be no evidence to support his convictions.

### 1. DNA Examination Kit and Forensic Interview Report

The respondent does not dispute that the state did not offer the victim's forensic examination report into evidence or call the forensic nurse who conducted the exam. Dkt. 8 at 6. The respondent argues that Lead Detective Sarah Carnes, however, did testify that Mr. Chambers' DNA "was not found in S.F.'s evidence kit or on the kitchen floor, and that the detective did not

---

[3] Mr. Chambers asserts, without citation, that Lead Detective Sarah Carnes testified at trial that Mr. Chambers "could have used a condom." Dkt. 15 at 4. He believes that if he were to show no spermatocidal killing agent was present, this "would have put [Detective Carnes] in contempt of court possibly." *Id.*

look for a towel or shirt that Chambers used to ejaculate into."[4] *See* Trial Transcript at 190-91, 194, 196, 216. Thus, the respondent argues, if Mr. Chambers "means that the lack of his DNA was new evidence, it was not, because that testimony was admitted at his trial," and Mr. "Chambers does not suggest that another man's DNA was discovered in S.F.'s kit." Dkt. 8 at 6.

      The Court has reviewed the trial court transcript, and it is clear from the proceedings that Detective Carnes testified that a forensic interview of the victim was conducted, and that Carnes was present in a separate observation room during the interview. Trial Transcript at 179-183. During that interview, Detective Carnes testified that the victim described the sexual allegations against Mr. Chambers. *Id.* at 183. Further, Detective Carnes testified that she went to the scene of the incident with an evidence technician who did not find any DNA evidence on the floor of the kitchen. *Id.* at 196. Detective Carnes also testified that an evidence kit was taken from the victim at the hospital, and that it was sent for testing, but no DNA evidence was found. *Id.* at 197-98.[5]

      Mr. Chambers' argument that these items were not placed into evidence, and if they had been, they would have established his innocence, are unavailing. This is not new evidence because at the trial it was undisputed that these investigative measures were conducted. It was also undisputed at the trial that Mr. Chambers' DNA was not found. The use of the evidence kit to show no presence of a spermicide—a contraceptive measure—does not negate the finding that

---

[4] Detective Carnes testified that during her interview with Mr. Chambers, he admitted to being aroused by the victim and at times had ejaculated into a towel or a shirt when he claimed he was masturbating in private. *See* Trial Transcript at 186, 189, 191, 194. The victim testified that these incidents occurred in her presence as a part of the sexual allegations against Mr. Chambers. *Id.* at 69, 90-91.

Detective Carnes testified that during the interview, in order to illicit a response, she told Mr. Chambers a towel had been recovered. *Id.* at 188. Detective Carnes testified that a towel and/or shirt was not actually collected as evidence in this case. *Id.* at 191, 194-95.

[5] Detective Carnes testified that it did not surprise her that no DNA was found: "There have been cases documented where the Defendant will actually admit to all of the incidents and a kit has been done within the same timeframe that this is done, and no DNA evidence is found." Trial Transcript at 198-99. And, it was Carnes' understanding that it is "very rare" for DNA to be present after digital penetration. *Id.* at 199.

Mr. Chambers engaged in sexual misconduct with a minor. Even if Mr. Chambers could produce evidence that no spermicide was present, which he has not done, a reasonable factfinder could have found him guilty of sexual misconduct based on Detective Carnes' testimony regarding the findings of her investigation and the victim's testimony that on incidents when Mr. Chambers lived in her home, he penetrated her vagina both digitally and with his penis. Trial Transcript at 64-66 ("We started kissing, and he started touching me on top of my pants . . . . He pulls his shorts down and puts the tip of his penis in my vagina." The victim demonstrated to the judge with her fingers that the penetration was under an inch or an inch.) and at 72 ("I laid down because I was really tired and then he started fingering me . . . . Putting his finger in my vagina.").

Accordingly, Mr. Chambers has failed to show that no reasonable factfinder would have convicted him if the actual evidence kit or the forensic interview report had been admitted into evidence.

### 2. Victim's Testimony

Mr. Chambers' contention that the entirety of the victim's testimony was stricken from the trial court record is incorrect. As the respondent correctly represents, and the trial court transcript reflects, Mr. Chamber's counsel objected to a certain line of questioning as leading, related to the victim's motivation to testify, and the trial court judge stated she was striking the victim's answers to those questions. Dkt. 8 at 7. There is no indication from the colloquy on pages 98 and 99, or the remainder of the trial court transcript, that the state court judge struck the entirety of the victim's testimony.[6] Mr. Chambers has not established actual innocence in the absence of any of the victim's testimony.

---

[6] Q. Are you saying what you're saying because you were mad at him because he was not going to be staying with you at some portion of time?

A. No.

Because Mr. Chambers' § 2254 petition is untimely, and he has not overcome this time bar by showing actual innocence, his petition must be dismissed with prejudice.

## IV. Petitioner's Pending Motions

Months after Mr. Chambers filed his response in opposition to the respondent's motion to dismiss, he filed a number of ancillary motions that the Court now addresses. *See* dkts. 17, 19, 20, and 21.

First, Mr. Chambers filed a motion seeking this Court to issue an order to the Monroe County Court to produce a complete file on his underlying criminal case, 53C09-1106-FB-000558, including trial and sentencing transcripts, the DNA testing results, the courtroom video from the bench trial, and the forensic nurse's report.[7] Dkt. 17. Mr. Chambers' motion to compel, dkt. [17],

---

Mr. Baggerly: Your honor, I just want to make sure my objection is on record. The attorney is testifying and basically we're getting punctuation marks as yes or no, and . . .

The Court: I'm not considering it substantively. If Ms. Veidlinger said are there any other reasons that you're testifying here today except to tell the truth, my attitude would be the same. Why don't you ask that question Ms. Veidlinger, and then we don't have that objection anymore.

Q. Sure, thank you Judge. Are there . . .

Mr. Baggerly: So she, I'm sorry, and I don't mean to be difficult, so Ms. Veidlinger can vouch for the witness?

The Court: She's not vouching for the witness. She's asking, are there any reasons that you are testifying except for telling the truth. How does that vouch for the witness, Mr. Baggerly?

Mr. Baggerly: Well, it's sort of like asking are you lying, you know? Everybody, she's already sworn to tell the truth, the whole truth and nothing but the truth the moment she sat down, but if the Court is not allowing it then there's nothing I can about it.

The Court: Let's just do this then. **I'll strike it from the record then and won't consider it.**

*See* Trial Transcript at 98-99 (emphasis added, striking victim's responses to this line of leading questioning).

[7] The Court notes that Mr. Chambers' motion to compel states that he wrote to the Court in April 2023 to see if he could be appointed an attorney. Dkt. 17; dkt. 17-1. However, the Court did not receive such correspondence, or any formal and separate motion for the appointment of counsel after. Pursuant to

is **DENIED** as the respondent manually filed the relevant state court records for the Court's review (docket 9), and as the Court has explained in its discussion above, Mr. Chambers' petition is dismissed. The Court requires no further expansion of the record with the items Mr. Chambers requests in his motion.[8]

Second, Mr. Chambers filed motions seeking summary judgment in his favor. Dkt. 19; dkt. 20. Motions for summary judgment filed in a habeas action are improper. For that reason and consistent with the Court's reasoning in dismissing Mr. Chambers' habeas petition discussed earlier, his motions seeking summary judgment, dkts. [19] and [20], are **DENIED**.

Finally, Mr. Chambers' motion requesting the status of this case, dkt. [21], is **GRANTED to the limited extent** that the Court has now issued its ruling granting the respondent's motion to dismiss Mr. Chambers' petition.

## V. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing

---

Southern District of Indiana Local Rule 7-1 motions have to be filed separately and a motion for appointment of counsel "must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court." S.D. Ind. L.R. 7-1.

The Court reminds Mr. Chambers that a petitioner pursuing federal habeas relief is entitled to counsel only when he is under a death sentence, which the petitioner here is not. *See* 18 U.S.C. § 3599(a)(2); *McFarland v. Scott*, 512 U.S. 849, 855 (1994). Counsel must also be appointed in a habeas case when an evidentiary hearing is necessary to resolve the petition, but this is not the case here, as the Court has explained in its analysis that Mr. Chambers' petition is untimely, and he has not shown actual innocence to overcome the time bar; an evidentiary hearing is not necessary for the Court to reach this resolution. *See* Rule 8(c) of the Rules Governing Section 2254 Cases.

[8] Attached to Mr. Chambers' motion is an order from the Monroe Circuit Court that states transcripts have previously been provided, the DNA lab results were not in the state court's possession, and there was no courtroom video from the bench trial. Dkt. 17-1.

of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Court requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The Court finds that jurists of reason would not disagree with the Court's conclusion that Mr. Chambers' petition is time barred and that he has not shown actual innocence. Therefore, the Court **DENIES** a certificate of appealability.

## VI. Conclusion

For the reasons explained above, Mr. Chambers' petition is time barred, he is not entitled to equitable tolling, and he has not established his actual innocence. Therefore, the respondent's motion to dismiss, dkt. [8], is **GRANTED**, a certificate of appealability **SHALL NOT** issue, and Mr. Chambers' petition is **DISMISSED with prejudice**. *Pavlovsky v. VanNatta*, 431 F.3d 1063, 1064 (7th Cir. 2005) ("The dismissal of a suit as untimely is a dismissal on the merits, and so should ordinarily be made with prejudice").

Mr. Chambers' motion to compel, dkt. [17], and his motions requesting summary judgment in his favor, dkt. [19] and dkt. [20], are **DENIED**. Mr. Chambers' motion requesting case status, dkt. [21], is **GRANTED to the limited extent** that the Court as now issued its ruling granting the respondent's motion to dismiss.

Final Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 9/11/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

MICHAEL S. CHAMBERS
115519
NEW CASTLE – CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov